IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL L. BLACKBURN,

    **Plaintiff,**

    v.                                     CASE NO. 24-3183-JWL

JOSEPH REYES, et al.,

    **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. At the time of filing, Plaintiff was in custody at the Wilson County Jail in Fredonia, Kansas ("WCJ"). Plaintiff has since been released from custody. The Court granted Plaintiff leave to proceed in forma pauperis.

**I. Nature of the Matter before the Court**

Plaintiff alleges that in early March 2023, he was working in a camper parked in his driveway. (Doc. 1, at 2.) Plaintiff alleges that his girlfriend, who was at work at the time, had recently filed a protection from abuse ("PFA") against Plaintiff but they had since made up. *Id.* at 2–3. Plaintiff alleges that they had not been able to go to court yet to have the PFA dropped. *Id.* at 3. His girlfriend's mother showed up—unaware of the reconciliation—and called the Neodesha Police Department ("NPD") to advise them that Plaintiff was on the property in violation of the PFA. *Id.*

Plaintiff alleges that the NPD showed up "in full force" and began knocking on the camper and speaking to Plaintiff from outside the window. *Id.* Plaintiff informed them that his girlfriend had given Plaintiff permission to be there "as well as them being witness to the fact of

1

seeing [Plaintiff] on the property all week long." *Id*. Plaintiff alleges that they discussed the matter for approximately 20 minutes, until Plaintiff's girlfriend "made it to the scene to help confirm [Plaintiff's] side of the story." *Id*. at 4.

Minutes before his girlfriend arrived, Plaintiff heard Officer Reyes tell Officer Petty to go to the patrol care and get the OC spray. Plaintiff asked Officer Reyes why he needed the pepper spray and told him that if he would turn on his body camera Plaintiff would come out and give himself up for the misdemeanor traffic ticket warrant that Plaintiff knew about. *Id*. Plaintiff advised Reyes that he has had pills planted on him in the past by law enforcement and Plaintiff remembered that Reyes was "a part of physically abusing" Plaintiff in a 2004 case. *Id*.

Plaintiff alleges that he once again asked the officers to turn on their body cameras, and Plaintiff was getting his keys and coming out. *Id*. at 5. Plaintiff alleges that as he was grabbing his keys, Officer Reyes grabbed the door to the camper and "broke in." *Id*. Plaintiff asked Officer Reyes why he did that and got no response. *Id*. Plaintiff stepped out of the camper and Officer Reyes advised Plaintiff that he was under arrest for the traffic warrant. *Id*.

Plaintiff alleges that he had his keys in one hand and a large lighter in the other hand, with both hands well above his head in a surrender position. *Id*. Plaintiff claims that at this time, Officer Reyes grabbed Plaintiff's right wrist and Officer Petty grabbed Plaintiff's left wrist. *Id*. at 5–6. Plaintiff claims that he turned his head to the right to ask Officer Reyes what they were doing, and Reyes nodded to Petty who then jumped in front of Plaintiff and pepper-sprayed him. *Id*. at 6.

Plaintiff claims that both officers pressed Plaintiff up against a chain link fence with Plaintiff's neck on the top spikes of the fence. *Id*. Plaintiff was able to push himself back from the fence and went headfirst to the ground as Officer Reyes got on Plaintiff's back and pressed

Plaintiff's face against the fence. *Id*. Plaintiff claims that he began yelling for help and for them to just stop and put the handcuffs on Plaintiff. *Id*. at 6–7. Plaintiff believes that another officer was holding off Plaintiff's girlfriend and her mother on the other side of the camper. *Id*.

Plaintiff claims that Officer Reyes cuffed Plaintiff and carried Plaintiff to the police cruiser "after what seemed like 2 minutes of using excessive force to knee [Plaintiff] and press [Plaintiff's] face against the fence." *Id*. at 7. Plaintiff alleges that the heater was turned on full blast inside the cruiser while it was 80 degrees outside. *Id*. Plaintiff alleges that the heat made the pepper spray worse to the point that Plaintiff almost wanted to kick out a window and scream for help again. *Id*. Plaintiff alleges that Officer Reyes stood outside the cruiser taunting Plaintiff until paramedics got there. *Id*. Plaintiff claims that he noticed he had lost three teeth. *Id*.

Plaintiff alleges that he was pulled out of the cruiser for a saline solution to be poured into his eyes. *Id*. at 8. Plaintiff alleges that the paramedics kept "cracking jokes," and purposefully spilling the saline solution down the leg of Plaintiff's shorts "shocking [Plaintiff] in the genitals" to the point that Plaintiff said he was done with being treated like this and to stop and just take him to jail. *Id*.

Plaintiff names as defendants: Joseph Reyes, Neodesha Police Department Captain; and Shaun Petty, Neodesha Police Officer. For relief, Plaintiff seeks $50,000 from each officer and injunctive relief in the form of asking for the officers' resignations. Plaintiff also seeks punitive damages.

## II. Statutory Screening

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised

claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the

plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III. Discussion

#### A. Excessive Force

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). "When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the

protections of the Fourth Amendment.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable." *Id.* (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (emphasis in original) (quotation marks omitted)). In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Id*. (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)). The inquiry is an objective one, and one that considers the totality of the circumstances. *Id*. (citation omitted). Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham*, 490 U.S. at 396). "The right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." *Edwards v. City of Muskogee, Oklahoma*, 841 F. App'x 79, 83 (10th Cir. 2021) (unpublished) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (internal quotation marks omitted)). "Reasonableness does not require that officers use alternative or less intrusive means if the conduct is otherwise reasonable." *Arnold v. City of Olathe, Kansas*, Case No. 2:18-cv-02703-HLT, 2021 WL 3129408, at *8 (D. Kan. July 23, 2021) (citation omitted).

The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Vette*, 989 F.3d at 1169 (quoting *Graham*, 490 U.S. at 396). In evaluating the third factor, a court considers "whether the plaintiff was fleeing or actively

resisting at the 'precise moment' the officer employed the challenged use of force." *Id*. (citation omitted). The Tenth Circuit has also held that "initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

### B. Heck Bar

Online district court records show that Plaintiff pleaded no contest to: 1) Interference with LEO; obstruct/resist/oppose misdemeanor warrant service or execution; 2) Possession of marijuana; and 3) Use/possess w/intent to use drug paraphernalia into human body. *See State v. Blackburn*, Case No. 2023-CR-000054 (District Court of Wilson County, Kansas). Plaintiff was sentenced to probation. If Plaintiff's claim in this case would necessarily imply the invalidity of his conviction, the claim may be barred by *Heck*. *See Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487. In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order. *Id*. at 486–87.

It is possible that Plaintiff's excessive force claim may not be barred by *Heck*, depending on the facts surrounding his arrest. "An excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Torres v. Madrid*, 60 F.4th 596, 600 (10th Cir. 2023) (citing *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015)). "For

example, the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared." *Id.* "[I]n cases where there are multiple uses of force or a continuing use of force, *Heck* may bar the plaintiff's claims as to some force but not all." *Id*. at 600–01 (citing *Hooks v. Atoki*, 983 F.3d 1193, 1197, 1201 (10th Cir. 2020) (although *Heck* barred plaintiff, who had pleaded no contest to two counts of assault and battery on a police officer, from bringing excessive-force claims based on four uses of force involved in subduing him, "[t]he fifth and sixth uses of force [we]re different" and thus not barred by *Heck* because plaintiff had alleged that he "no longer posed a threat")).

In *Torres*, the Tenth Circuit reversed the decision finding plaintiff's claims were barred by *Heck* as inconsistent with plaintiff's no-contest pleas to charges of aggravated flight from a law-enforcement officer and assault upon a peace officer "because her pleas are not inconsistent with her claims that the officers used excessive force by firing at her after she had driven past them and no longer posed a threat to them." *Id*. at 599–600. "The analysis of whether *Heck* bars the entirety of a plaintiff's excessive-force claims thus requires 'compar[ing] the plaintiff's allegations to the offense [s]he committed." *Id*. at 601 (citing *Havens*, 783 F.3d at 782).

The Court cannot determine whether Plaintiff states a valid excessive force claim or whether or not such a claim may be barred by *Heck* based on his state court criminal conviction. The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate NPD officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate NPD officials to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

### C. Injunctive Relief

To the extent Plaintiff seeks the termination of officers in his request for relief, the Court is without authority to grant such relief. *See Nicholas v. Hunter*, 228 F. App'x 139, 141 (3rd Cir. 2007) ( "The remaining relief requested is not available as the District Court lacks authority to order a federal investigation and prosecution of the defendants or the termination of their employment."); *Goulette v. Warren*, No. 3:06CV235-1-MU, 2006 WL 1582386, at n.1 (W.D. N.C. June 1, 2006) ("The Court notes that even if Plaintiff's claims prevailed in this case, this Court would not, based upon this law suit, have the authority to order the termination of the Defendant's employment or to grant Plaintiff an immediate, early release from jail."); *Dockery v. Ferry*, No. 08-277, 2008 WL 1995061, at *2 (W.D. Pa. May 7, 2008) (finding that the court cannot issue an order which would direct a local government to terminate a police officer's employment) (citing *In re Jones*, 28 F. App'x 133, 134 (3rd Cir. 2002) ("Jones is not entitled to relief . . . [S]he asks this Court to prohibit the State of Delaware from filing charges against her. The federal courts, however, have no general power in mandamus action to compel action, or in this case inaction, by state officials.")); *Martin v. LeBlanc*, No. 14-2743, 2014 WL 6674289, at n.1 (W.D. La. Nov. 24, 2014) (finding that where plaintiff requested an investigation, the termination of the defendants' employment and the closure of the prison, "[s]uch relief is not available in this action"); *Merrida v. California Dep't of Corr.*, No. 1:06-CV-00502 OWW LJO P, 2006 WL 2926740, at n.1 (E.D. Cal. Oct. 11, 2006) (finding that where plaintiff prays for the termination of defendant's employment, "the court cannot award this form of relief to plaintiff) (citing 18 U.S.C. § 3626(a)(1)(A)).

### D. Motion for Relief

Plaintiff has filed a motion for relief (Doc. 3) setting forth addresses where Defendant may be served and reiterating his request for relief in his Complaint. Because this case has not passed screening, service on Defendants is premature. The Court will address service if the Complaint survives screening. Therefore, Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motion for relief (Doc. 3) is **denied.**

**IT IS FURTHER ORDERED** that**:**

(1) The NPD officials shall submit the *Martinez* Report by **January 17, 2025**. Upon the filing of that Report, the Court will screen Plaintiff's Complaint. If the Complaint survives screening, the Court will enter a separate order for effecting service on defendants.

(2) NPD officials are directed to undertake a review of the subject matter of the Complaint:

    a. To ascertain the facts and circumstances;

    b. To consider whether any action can and should be taken to resolve the subject matter of the Complaint; and

    c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the NPD officials wish to file any exhibits or portions of the report under seal or without service on

Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The NPD officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(5) Authorization is granted to the NPD officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter NPD Chief of Police Sam Tomlinson as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the Chief of Police may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to the NPD Chief of Police, and to the City Attorney for Neodesha, Kansas.

**IT IS SO ORDERED**.

**Dated December 13, 2024, in Kansas City, Kansas.**

                                                  **S/ John W. Lungstrum**
                                                  **JOHN W. LUNGSTRUM**
                                                  **UNITED STATES DISTRICT JUDGE**